1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8
9

LORI LYNN KENDALL,

Case No.  1:19-cv-01485-SKO

10

Plaintiff,

11

v.

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

12
13

ANDREW SAUL,
Commissioner of Social Security,

(Doc. 1)

14

Defendant.

_____/

15
16
17

## I.    INTRODUCTION

18

On May 6, 2017, Plaintiff Lori Lynn Kendall ("Plaintiff") filed a complaint under 42 U.S.C.

19

§ 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the

20

"Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB")

21

under Title II of the Social Security Act (the "Act").  (Administrative Record ("AR") 568–69; *see*

22

No. 1:17–cv–00642–SKO, Doc. 1.)   On May 8, 2018, the Court vacated the Commissioner's

23

decision and remanded the case for further administrative proceedings.  (*See* AR 580–603; No.

24

1:17–cv–00642–SKO, Doc. 21.)

25

After the Commissioner again denied her application for DIB payments, Plaintiff filed the

26

instant complaint on October 21, 2019, seeking judicial review of the Commissioner's decision.

27

(Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted,
28

1   without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

2                                    **II.      BACKGROUND**

3          On May 22, 2013, Plaintiff filed an application for DIB payments, alleging that she became

4   disabled on March 18, 2013, due to chronic fatigue syndrome ("CFS") and fibromyalgia.  (AR 20,

5   74, 197, 209, 470.)  Plaintiff was born on May 30, 1963, and was 49 years old on the alleged onset

6   date.  (AR 74, 89, 197.)  She has a high school education and past work experience as a medical

7   receptionist and an x-ray operator.  (AR 26, 30–31, 184, 200, 210, 364.)

8   **A.      Relevant Medical Evidence[2]**

9          **1.      Treating Physician Rex A. Adams, M.D.**

10         On March 15, 2013, Plaintiff presented to rheumatologist Dr. Adams for a self-referred

11  rheumatology examination.  (AR 310–12.)  Plaintiff reported her symptoms of fatigue and poor

12  mental focus had been worsening over the last 18 months.  (AR 310.)  She complained of cold

13  symptoms, headache, sore throat, cervical lymphadenopathy, and increasing joint and muscle pain

14  in her neck, shoulders, low back, and legs.  (AR 310.)  Dr. Adams "[s]uggest[ed]" two months of

15  medical disability for Plaintiff beginning on March 18, 2013.  (AR 312.)  On May 7, 2013, Dr.

16  Adams extended disability to July 21, 2013.  (AR 302.)  On July 9, 2013, Dr. Adams again extended

17  disability for an additional six months.  (AR 370.)

18         **2.      Treating Physician Michael Powell, D.O.**

19         Upon relocation of Dr. Adams (AR 54–55), Plaintiff established care with Dr. Powell, a

20  rheumatologist, on October 31, 2013.  (AR 241, 461.)  On August 6, 2015, Dr. Powell completed a

21  "Questionnaire" on Plaintiff's behalf.  (AR 464–65.)  He opined that Plaintiff's medical problems

22  precluded her from performing "any full-time work at any exertional level, including the sedentary

23  level."  (AR 464.)  He noted Plaintiff had muscular pain for greater than 12 months.  (AR 464.)  Dr.

24  Powell stated that Plaintiff's primary impairment was "[s]evere fatigue with pain" and "decreased

25  cognitive function."    (AR 464.)    He based his opinion on "[s]ymptoms consistent with

26  [f]ibromyalgia," specifically that Plaintiff had 13 of 19 "pain points" and was therefore positive for

27

28
_____
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7, 8.)
[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

a fibromyalgia diagnosis.  (AR 464.)  Dr. Powell opined that Plaintiff could sit and stand for one hour and walk for thirty minutes during an eight-hour day and was required to lie down for two hours during an eight-hour day.  (AR 464.)  Dr. Powell further opined that Plaintiff was "[u]nable to multi-task due to cognitive dysfunction."  (AR 464.)

### 3.    Stanford Hospital and Clinics

Plaintiff was referred to Stanford to be evaluated for CFS/myalgic encephalomyelitis and presented for an assessment on October 21, 2014.  (AR 390–93.)  Plaintiff attended a follow-up appointment on February 10, 2015.  (AR 407–11.)  Aimee Jadav, a physician's assistant ("PA"), noted that Plaintiff "should not be pushed into activities that worsen [her] symptoms," such as "[m]isdirected exercise" and major stressors.  (AR 410–11.)

On September 25, 2015, Jane Norris, PA-C, submitted a letter stating that Plaintiff "meets the clinical criteria for Chronic Fatigue and Immune Dysfunction Syndrome."  (AR 466.)  PA Norris opined that "[u]ntil [Plaintiff's] symptoms have measurably improved, I recommend that she limit her workload, daily activities and stress, as overexertion could lead to a worsening of her condition."  (AR 466.)

On February 22, 2016, Kathleen Vigano, PA-C, submitted a letter stating that Plaintiff "meets the clinical criteria for Chronic Fatigue Syndrome (CFS) / Myalgic Encephalomyelitis (ME)."  (AR 745.)  PA Vigano "recommended[ed] against [Plaintiff] entering the work force, as she is physically and cognitively unable to do so; and the attempt would worsen her current condition."  (AR 745.)

### 4.    Family First Medical Care

On February 7, 2017, Plaintiff presented to Family First Medical Care with a cough.  (AR 791.)  Plaintiff denied any fatigue or muscle pain, and on physical examination, Elisa Martinez, PA, observed that Plaintiff was cooperative, alert and oriented, and had normal judgment and insight.  (AR 791–92.)  On March 8, 2017, Plaintiff complained of a sore throat, and on examination, PA Martinez made similar findings.  (AR 789–90.)

On March 13, 2017, Plaintiff appeared for a follow-up appointment for her sinus infection.  (AR 786.)  She reported fatigue and denied pain, anxiety, depression, joint and muscle pain,

tenderness, and back pain.  (AR 786–87.)  PA Martinez found Plaintiff to be cooperative and alert and oriented, with normal insight, judgment, attention span, and concentration.  (AR 787.)

On April 14, 2017, Plaintiff received care for a respiratory infection.  (AR 783.)  She denied fatigue, muscle pain, or tenderness, and she was found to have normal mental status.  (AR 784.)  Treatment notes from subsequent appointments for illness in May 2017 were largely unchanged.  (AR 777–78, 780–81.)

On June 12, 2018, Plaintiff presented for transitional care related to her fibromyalgia.  (AR 770.)  Plaintiff reported fatigue and joint and muscle pain.  (AR 771.)  PA Martinez found Plaintiff to be cooperative and alert and oriented.  (AR 771–72.)

On January 30, 2019, Plaintiff had a follow-up appointment for her depression medication.  (AR 767.)  Plaintiff reported pain.  (AR 768.)

**5.    Stephanie M. Pizzirulli, D.C.**

On March 21, 2019, Dr. Pizzirulli, a chiropractor, submitted a letter on Plaintiff's behalf.  (AR 805–06.)  Dr. Pizzirulli indicated that Plaintiff "does work off and on trying to get by . . . [b]ut is unable to work a 40 hour per week job," and that Plaintiff could not "sit or stand too long, without pain in the spine becoming unbearable."  (AR 805.)  Dr. Pizzirulli opined that Plaintiff was "very limited in what she can do and can't do" and "need[ed] help."  (AR 806.)

**6.    Consultative Examiner Paul Martin, Ph.D.**

On October 2, 2013, Dr. Martin, a licensed psychologist, reviewed Dr. Adams' treatment notes and medical source statement and conducted a mental status evaluation of Plaintiff at the request of the Department of Social Services.  (AR 363–65.)  Dr. Martin observed that Plaintiff was alert and oriented and had: adequate attention/concentration, memory, and abstraction; a fair fund of knowledge; normal insight/judgment and thought content; and an organized, coherent, linear, and goal-directed thought process.  (AR 364.)  Plaintiff was diagnosed with major depressive disorder, recurrent (moderate), and a pain disorder associated with both psychological factors and a general medical condition.  (AR 365.)  Dr. Martin also assessed Plaintiff's mental residual functional

capacity ("RFC")[3] and opined that Plaintiff had no impairment to her ability to understand, remember, and carry out simple instructions; mild impairment to her ability to understand, remember, and carry out detailed and complex instructions, maintain attention, concentration, and pace throughout the current evaluation, endure the stress of the current interview, and interact with the public, supervisors, and coworkers in a work setting; and moderate impairment to her ability to maintain pace and persistence throughout the evaluation and adapt to changes in routine work-related settings.  (AR 365.)

### 7.    Consultative Examiner Satish K. Sharma, M.D.

On September 20, 2018, Dr. Sharma performed an internal medicine evaluation of Plaintiff. (AR 748–51.)  Plaintiff told Dr. Sharma that she does not use any drugs.  (AR 749.)  Dr. Sharma assessed Plaintiff's physical RFC and opined that Plaintiff could push, pull, lift, and carry 20 pounds occasionally and 10 pounds frequently and walk and/or stand for six hours out of an eight-hour workday with appropriate breaks.  (AR 750.)  Dr. Sharma further opined that Plaintiff had no manipulative or postural limitations.  (AR 750–51.)

### 8.    Consultative Examiner Patricia Spivey, Psy.D.

On September 22, 2018, Dr. Spivey performed a psychological disability assessment of Plaintiff.  (AR 759–65.)  Plaintiff told Dr. Spivey that she uses marijuana daily for pain and insomnia.  (AR 759.)  Dr. Spivey assessed Plaintiff with pain disorder with psychological factors. (AR 761.)  Dr. Spivey noted that, "by presentation," Plaintiff did not have severe symptoms of any psychological condition, nor was there any sign of a thought or mood disorder.  (AR 761.)  Dr. Spivey also assessed Plaintiff's mental RFC and opined that Plaintiff had no impairment to her ability follow simple or complex instructions, maintain adequate pace or persistence to complete simple or complex tasks, maintain adequate attention/concentration, verbally communicate

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.' "  *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

effectively with others, and communicate effectively in writing; mild impairment to her ability to withstand the stress of a routine work day and interact appropriately with co-workers, supervisors, and the public on a daily basis; and mild-to-moderate impairment to her ability to maintain emotion stability/predictability and respond appropriately to usual work situations and changes in a routine work setting.  (AR 761, 764.)

**9.    State Agency Physicians**

On September 16, 2013, Martha A. Goodrich, M.D., a state agency physician, reviewed the record and assessed Plaintiff's physical RFC.  (AR 79–80, 82–83.)  Dr. Goodrich found that Plaintiff could: occasionally lift and/or carry 20 pounds and frequently 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for more than six hours in an eight-hour workday; perform unlimited pushing/pulling with the upper and lower extremities, subject to the lift and carry restrictions; occasionally climb, kneel, crouch, and crawl; and frequently balance and stoop.  (AR 82–83.)  Dr. Goodrich found that Plaintiff had no other limitations.  (AR 83.)  Upon reconsideration on March 7, 2014, another state agency physician, A. Nasrabadi, M.D., reviewed the record and affirmed Dr. Goodrich's findings.  (AR 96–98.)

State agency physician H. Amado, M.D., reviewed the record and assessed Plaintiff's mental RFC on October 18, 2013.  (AR 79–80, 83–85.)  Dr. Amado opined that Plaintiff had the severe impairments of affective disorder and somatoform disorder, and had moderate difficulties in maintaining concentration, persistence, and pace, and responding appropriately to changes in the work setting.  (AR 80.)  Dr. Amado opined further that Plaintiff could maintain concentration, persistence, and pace for only simple tasks.  (AR 84.)  Upon reconsideration on March 3, 2014, another state agency physician, G. Ikawa, M.D., reviewed the record and affirmed Dr. Amado's findings.  (AR 94–95, 98–99.)

**B.    Administrative Proceedings**

**1.    Plaintiff's Testimony**

At the first administrative hearing on August 17, 2015, Plaintiff appeared with counsel and testified before the Administrative Law Judge ("ALJ") as to her alleged disabling conditions.  (AR 44–64.)  Plaintiff testified that her primary physical problem is fibromyalgia and she also has major

anxiety and depression.  (AR 46–48.)  She was seeing a mental health professional until her insurance "ran out."  (AR 48.)

Plaintiff testified that the long drives to Stanford Medical Center for her treatment would make her "really sick."  (AR 55–56.)  Sitting in the car for long periods causes her problems "anxiety-wise" but not physical "pain-wise."  (AR 56, 57.)  When Plaintiff gets anxious, she cannot concentrate, focus, or remember anything.  (AR 57.)  Plaintiff testified that her fibromyalgia causes her pain in her shoulders, neck, and back, and she also gets "bad" headaches.  (AR 57.)  Other symptoms include brain fog and exhaustion.  (AR 58, 59.)  According to Plaintiff, she must lie down for two to four hours each day.  (AR 60.)  She can use her hands for only about thirty minutes before she needs to rest them for about fifteen minutes before using them again.  (AR 61.)  Plaintiff stated that she can perform light house activities and she drives every day.  (AR 50–51.)

On remand, the ALJ held another hearing on April 10, 2019.  (AR 498–537.)  Plaintiff testified that she started working as a paraprofessional—an aide to teachers—for Modesto City Schools in 2016.  (AR 503, 505.)  Her duties include helping feed "handicapped" children, assisting them with their assignments, supervising them during physical education, and checking out books to them in the library.  (AR 508–09.)  On average, Plaintiff works about three days a week, for about five hours a day if she is in a classroom.  (AR 507.)  Her pay averages to $12.77 per hour, and she made $11,681 in 2017 and $13,278 in 2018.  (AR 506–07.)

Plaintiff believes she is disabled because she is "sick" and "exhausted" when she is at work.  (AR 510.)  Plaintiff testified that she experiences nausea, headaches, pain in her shoulder, neck, and back, brain fog, and heart palpitations.  (AR 510–11.)  She is sensitive to noise.  (AR 510–11.)  Plaintiff's anxiety makes it difficult for her to concentrate.  (AR 513–14.)  According to Plaintiff, she can sit or stand for about thirty minutes at a time, walk for a few blocks, and lift no more than eight pounds.  (AR 514.)  Plaintiff can handle her own personal self-care, and she cooks, cleans, and goes grocery shopping.  (AR 514–15.)  She enjoys arts and crafts and watching movies.  (AR 515, 516–17.)

With regard to her medical treatment, Plaintiff testified that she was "getting excellent care" from the specialty clinic at Stanford until she "lost [her] work insurance."  (AR 512.)  She is no

1    longer seeing a specialist.  (AR 512.)  To alleviate her headaches, Plaintiff sees a chiropractor.  (AR

2    512.)  Plaintiff is not receiving any regular mental health treatment because her insurance does not

3    cover it.  (AR 513.)  As for medications, Plaintiff takes Trazadone for sleep, Zoloft for anxiety and

4    depression, and over-the-counter medications for pain.  (AR 513.)

5              **2.        Vocational Expert's Testimony**

6              At the April 2019 hearing, a Vocational Expert ("VE") indicated that Plaintiff had the

7    following past work: as a receptionist, Dictionary of Operational Titles ("DOT") code 237-367.038,

8    which was sedentary exertional work, with a specific vocational preparation ("SVP")[4] of 4; and as

9    an x-ray operator, DOT code 199.361-010, light, SVP of 5.  (AR 528–29.)  The ALJ asked the VE

10   to consider a person of Plaintiff's age, education, and work background and assume the person could

11   perform light work with the following limitations: occasionally climb, balance, stoop, kneel, crouch,

12   and crawl; and limited to working in moderately noisy environments.  (AR 529–30.)  The VE

13   testified such a person could perform Plaintiff's past relevant work.  (AR 530.)

14             The ALJ asked a follow-up question regarding a second hypothetical where the worker from

15   the first hypothetical had the following additional limitations: understanding, remembering, and

16   carrying out simple, routine, and repetitive tasks; using judgment limited to simple work-related

17   decisions; unable to perform any "production rate pace, meaning assembly line work"; and able to

18   perform goal or task-oriented work.  (AR 530.)  The VE testified that such a person could not

19   perform Plaintiff's past relevant work but could perform other light jobs in the national economy,

20   such as fundraiser II, DOT code 293.357-014, SVP 2, information clerk, DOT code 237.367-018,

21   SVP 2, and survey worker, DOT code 205.367-054, SVP 2.  (AR 530–31.)

22   **C.      The ALJ's Decision**

23             In a decision dated June 28, 2019, the ALJ found that Plaintiff was not disabled, as defined

24   by the Act.  (AR 470–91.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R.

25   § 416.920.  (AR 472–91.)  At step one, the ALJ determined that Plaintiff had engaged in substantial

26   ―――――――――――――――

27   [4] Specific vocational preparation, as defined in the DOT, App. C, is the amount of lapsed time required by a typical
worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a
specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).

28   Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest
level – over 10 years of preparation).  *Id.*

gainful activity from October 2017 to December 2017 and October 2018 to December 2018.  (AR 472–73.)  There had been, however, "a continuous 12-month period(s)" since the alleged onset date of March 18, 2013 during which Plaintiff did not engage in substantial gainful activity, and the ALJ's remaining findings addressed those periods. (AR 473.)  At step two, the ALJ found Plaintiff's following impairments to be severe: fibromyalgia; CFS and headaches.  (AR 473.)  The ALJ further found, however, that Plaintiff had only mild limitations in the four areas mental functioning (also known as the "Paragraph B" criteria): understanding, remembering, or applying information; interacting with others; adapting or managing oneself; and concentrating, persisting, or maintaining pace.[5]  (AR 473, 479.)  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.  Accordingly, the ALJ found that "[b]ecause [Plaintiff's] medically determinable mental impairments [of anxiety and depression] cause no more than 'mild' limitation in any of the functional areas, they are nonsevere."  (AR 479 (citing  20  C.F.R.  §  404.1520a(d)(1).)    Moreover,  Plaintiff  did  not  have  an  impairment  or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 479.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) except she can occasionally climb ramps, stairs, ladders, or scaffolds.  She can occasionally balance, stoop, kneel, crouch or crawl.  She is limited to work in moderately noisy environments.

---

[5] The Court notes that the ALJ, in listing his findings as to each of the four areas of mental functioning, stated that he found mild limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing oneself, and "*moderate* limitation in concentrating, persisting, or maintaining pace."  (AR 479, emphasis added.)  Given the ALJ's other statements in his opinion—that he found "no more than mild limitations" in the four areas of mental functioning (AR 473) and that Plaintiff's mental impairments "cause no more than 'mild' limitation in any of the functional areas" (AR 479)—and the ALJ's explicit rejection of Dr. Martin's opinion that Plaintiff's ability to maintain pace and persistence was moderately impaired (AR 477), the Court assumes that the ALJ intended to find mild limitations to the four areas of mental functioning and made a typographical error in writing "moderate" when he meant to use "mild" in describing the pace and persistence limitation.

(AR 479.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not fully supported."  (AR 487.)  The ALJ found that, based on the RFC assessment, Plaintiff retained the capacity to perform her past work as a receptionist and an x-ray operator and thus was not disabled (step four).  (AR 491.)

As Plaintiff did not file exceptions with the Appeals Council disagreeing with the ALJ's decision, and the Appeals Council did not otherwise assume jurisdiction of the case within 60 days of the decision, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.984(b)(1), (d); *Lopez-Frausto v. Saul*, No. 1:20–CV–1611–JLT, 2020 WL 6728196, at *3 (E.D. Cal. Nov. 16, 2020) ("If no exceptions are filed and the Appeals Council does not assume jurisdiction within 60 days of the decision, the ALJ's new decision becomes the final decision of the Commissioner after remand.").

### III.   LEGAL STANDARDS

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner "is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  *Id.* § 423(d)(2)(B).  For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process"). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.      Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

U.S. 197, 229 (1938)).  "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

///

## IV.   DISCUSSION

Plaintiff contends that the ALJ erred in three respects: (1) the ALJ erred in finding at step two that Plaintiff's mental impairments associated with her fibromyalgia and CFS were not severe and in failing to include any mental limitations in the RFC; (2) the ALJ's RFC assessment that Plaintiff can perform light work with no mental limitations is not supported by substantial evidence; and (3) the ALJ failed to articulate valid reasons for discounting Plaintiff's testimony regarding her subjective complaints and other lay evidence. (*See* Doc. 17 at 17–36; Doc. 22 at 2–5.)   The Court addresses each argument in turn, and, for the reasons explained below, concludes that the ALJ did not err.

**A.   The ALJ Reasonably Determined That Plaintiff's Mental Impairments Were Non-Severe at Step Two and Did Not Err in Excluding Mental Limitations From the RFC**

**1.   Legal Standard**

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)).   "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and TITLES II & XVI: THE SEQUENTIAL EVALUATION PROCESS, Social Security Ruling ("SSR") 86-8 (S.S.A. 1986)).

"[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities." *Smolen*, 80 F.3d at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)).   "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." TITLES II & XVI: MED. IMPAIRMENTS THAT ARE NOT SEVERE, SSR 85-28 (S.S.A. 1985).   Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," (2) "[c]apacities for seeing, hearing, and speaking," (3) "[u]nderstanding, carrying out, and remembering simple instructions," (4) "[u]se of judgment," (5) "[r]esponding appropriately to supervision, co-workers and usual work situations," and (6) "[d]ealing with changes in a routine work setting."   20 C.F.R. § 416.922(b).

1    "An impairment or combination of impairments can be found 'not severe' only if the

2    evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's]

3    ability to work.'"  *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28).  Additionally, "an ALJ may find

4    that a claimant lacks a medically severe impairment or combination of impairments only when his

5    conclusion is 'clearly established by medical evidence.'"  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th

6    Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding

7    that the claimant "failed to meet his burden of establishing disability" where "none of the medical

8    opinions included a finding of impairment, a diagnosis, or objective test results").

9    "Great care should be exercised in applying the not severe impairment concept."  SSR 85–

10   28.  "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect

11   of an impairment or combination of impairments on the individual's ability to do basic work

12   activities, the sequential evaluation should not end with the not severe evaluation step.'"  *Webb*, 433

13   F.3d at 687 (alteration in original) (quoting SSR 85–28).

14   Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation

15   process by identifying at an early stage those claimants whose medical impairments are so slight

16   that it is unlikely they would be found to be disabled even if their age, education, and experience

17   were taken into account."  *Yuckert*, 482 U.S. at 153.  In other words, "the step-two inquiry is a de

18   minimis screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290 (*citing Yuckert*,

19   482 U.S. at 153–54).  Nonetheless, "[t]he plaintiff has the burden of establishing the severity of the

20   impairment."  *Cookson v. Comm'r of Soc. Sec.*, No. 2:12–cv–2542–CMK, 2014 WL 4795176, at *2

21   (E.D. Cal. Sept. 25, 2014)

22       **2.      Analysis**

23   Plaintiff contends the ALJ erred in determining that her mental impairments associated with

24   her CFS and fibromyalgia were non-severe because the ALJ improperly rejected the opinions of

25   examining psychologists Drs. Spivey and Martin.[6]  (*See* Doc. 17 at 19–20.)  According to Plaintiff,

26   _____

27   [6] Plaintiff also notes that the ALJ discounted the state agency psychiatrists' opinions, but she does not specifically contest any of the reasons provided by the ALJ for doing so.  (*See* Doc. 17 at 18–19, 20.)  To the extent that Plaintiff is claiming that the ALJ erroneously rejected the state agency psychiatrists' opinions, the Court finds that the claim has been waived.  *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood*

28   *v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)) (courts "review only issues which are argued specifically

1    "there is no psychiatric support for the ALJ's exclusion of any mental limitations from his [RFC]

2    finding," and "[t]he ALJ simply disagreed with the psychiatrists' and psychologists' opinions and

3    relied on his lay interpretation of the psychiatric evidence." (*See* Doc. 17 at 20–21.)

4        In making this claim, however, Plaintiff fails to acknowledge that the ALJ actually assigned

5    "significant weight" to the majority of Drs. Spivey's and Martin's opinions, and the ALJ's findings

6    of mild limitations to Plaintiff's mental functioning are largely consistent with those opinions.  (AR

7    477, 478–79.)   Indeed, Dr. Martin opined that Plaintiff had mild impairment to her ability to

8    understand, remember, and carry out detailed and complex instruction, maintain attention and

9    concentration, maintain pace, and interact with the public, supervisors, and coworkers in a work

10   setting; and Dr. Spivey opined that Plaintiff had no impairment to her ability to understand,

11   remember, and carry out complex instructions and maintain attention, concentration, pace, or

12   persistence, and mild impairment to her ability to withstand the stress of a routine work day and

13   interact with the public, co-workers, and supervisors.  (AR 365, 761, 764.)

14       The portions of Drs. Martin's and Spivey's opinions discounted by the ALJ were their

15   findings of moderate impairments.  Specifically, the ALJ rejected Dr. Martin's opinion that Plaintiff

16   had moderate impairment to her ability to maintain pace and persistence and adapt to changes in

17   routine work-related settings, and the "moderate" portion of Dr. Spivey's opinion that Plaintiff had

18   a mild-to-moderate impairment in her ability to maintain emotional stability/predictability at work

19   and respond appropriately to work situations and changes.[7]  (AR 365, 478–79, 761, 764.)  The Court

20   finds that the ALJ did not err in discounting these opinions.

21       The weight given to medical opinions depends in part on whether they are proffered by

22   treating, examining, or non-examining professionals.  *Holohan v. Massanari,* 246 F.3d 1195, 1201–

23   02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).   Generally, a treating

24   physician's opinion carries more weight than an examining physician's opinion, and an examining

---

25   and distinctly in a party's opening brief"); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments
26   not raised by a party in its opening brief are deemed waived.")

27   [7] The Court notes that Dr. Spivey indicated a mild-to-moderate impairment to Plaintiff's ability to respond appropriately
     to usual work situations and changes in a routine work setting on the checkbox portion of her medical source statement.
     (AR 764.) In the report section of her opinion, however, Dr. Spivey indicated that Plaintiff had no impairment to her
28   ability to adapt to changes in job routine and only mild impairment to her ability to withstand the stress of a routine
     work day. (AR 761.)

physician's opinion carries more weight than a non-examining physician's opinion.  *Holohan*, 246 F.3d at 1202.  To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830–31.  By contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence."  *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### a.  Dr. Spivey

Dr. Spivey's opinion that Plaintiff had a mild-to-moderate impairment in her ability to maintain emotional stability/predictability at work and respond appropriately to work situations and changes (AR 674) was uncontradicted, so the ALJ was required to provide a clear and convincing reason supported by substantial evidence for rejecting the opinion.  *Lester*, 81 F.3d at 830–31.  One reason provided by the ALJ for discounting Dr. Spivey's opinion was that the finding of a moderate limitation was "not consistent" with Dr. Spivey's observations from her examination of Plaintiff.  (AR 479.)  In her report, Dr. Spivey stated, "[b]y presentation, [Plaintiff] d[id] not have severe symptoms of any psychological condition" or any signs of a thought or mood disorder, and Plaintiff was "in no acute distress."  (AR 761.)  Thus, the ALJ's determination that Dr. Spivey's opinion was inconsistent with her own examination findings was a clear and convincing reason for not relying on her opinion.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradictions between a doctor's opinion and that doctor's own observations is a clear and convincing reason for discounting the doctor's opinion).

Plaintiff disagrees with the ALJ's determination that Dr. Spivey's "clinical findings do not support [her] opinion[]" (*see* Doc. 17 at 19), but she fails to explain why the evidence cited by the ALJ does not support his conclusion.  Instead, Plaintiff asserts that Dr. Spivey's opinion is

16

corroborated by to the opinions of the state agency physicians—which, the Court notes, were also rejected by the ALJ[8]—opining, in part, that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting, and Plaintiff claims that "[t]his approval by the state agency physicians lends additional support to [Dr. Spivey's] opinion[]." (*See* Doc. 17 at 19–20; AR 84.) It is well-settled, however, that the ALJ, not the Court, is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities in the evidence. *Magallanes*, 881 F.2d at 750. Where "the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ]." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Therefore, the Court concludes that the ALJ did not err in discounting Dr. Spivey's opinion that Plaintiff had a mild-to-moderate adaption limitation.[9]

### b. Dr. Martin

Dr. Martin opined that Plaintiff was moderately impaired in her ability to maintain pace and persistence and adapt to changes in routine work-related settings. (AR 365.) In affording "[m]inimal weight" to this portion of Dr. Martin's opinion, the ALJ explained:

> Dr. Martin examined [Plaintiff] in 2013, and he reviewed only a vendor questionnaire and progress notes from Dr. Adams. He did not have the benefit of reviewing the longitudinal treatment record. It is not clear that her ability to maintain pace and persistence translates to any specific work scenario. It is unclear how he reached this conclusion regarding moderate limitation in these areas, as the mental status examination was normal, other than "fair" fund of knowledge based on [Plaintiff's] ability to name three of the last five presidents and being tearful at times.

(AR 477.) Pointing to Dr. Martin's findings from his mental status examination of Plaintiff, the ALJ stated that it was "not clear how these findings warrant" moderate limitations. (AR 477.)

The ALJ further explained:

> In terms of the moderate limitation to adapt to changes in routine work-related settings, such a limitation is contradicted by [Plaintiff's] own testimony regarding her duties at work, which vary, and include helping feed handicap children, supervising their play, helping with homework, or even working in the library and checking out books. Her varied duties show she can in fact adapt to routine change

---

[8] As noted above, Plaintiff did not specifically contest the ALJ's reasons for rejecting the state agency physicians' opinions in her opening brief, and the Court finds that any such challenge has been waived.

[9] In her opening brief, Plaintiff did not specifically address any of the other reasons articulated by the ALJ for discounting Dr. Spivey's opinion, so Plaintiff has waived any challenge to those reasons. *See Smith*, 194 F.3d at 1052; *see also Pendley*, 2016 WL 1618156, at *8.

1   in a work related setting.  The examination by [Dr. Martin] was performed in October
    2013 and the treatment notes since 2015 note, on numerous occasions, normal mental
2   status.

3   (AR 478.)

4          Like Dr. Spivey's opinion, Dr. Martin's opinion that Plaintiff is moderately impaired in her

5   ability to adapt to changes in routine work-settings was uncontradicted, so the ALJ was required to

6   provide a clear and convincing reason supported by substantial evidence for rejecting that opinion.

7   *Lester*, 81 F.3d at 830–31.  Although not specifically identified by the ALJ as a basis for its rejection,

8   Dr. Martin's opinion that Plaintiff was moderately limited in maintaining pace and persistence was,

9   however, contradicted by Dr. Spivey's opinion that Plaintiff had no impairment in maintaining

10  adequate pace and persistence. (AR 761.)  Dr. Martin's latter opinion could, therefore, be rejected

11  for "specific and legitimate reasons" supported by substantial evidence.  *Trevizo*, 871 F.3d at 675

12  ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

13  may . . . reject it by providing specific and legitimate reasons that are supported by substantial

14  evidence.") (internal quotation marks and citation omitted).

15         The ALJ discounted the moderate limitations opined by Dr. Martin in part because it was

16  "not clear" how those limitations were supported by Dr. Martin's generally normal findings from

17  his mental status examination of Plaintiff.  (AR 477.)  For example, Dr. Martin found that Plaintiff

18  was alert and oriented and had adequate attention/concentration, memory, and abstraction, fair fund

19  of knowledge, normal insight/judgment and thought content, and an organized, coherent, linear, and

20  goal-directed thought process.  (AR 364.)  Dr. Martin also observed that Plaintiff presented in a

21  friendly and cooperative manner during the evaluation and "interacted appropriately."  (AR 364.)

22  Therefore, the ALJ's determination that Dr. Martin's opinions were unsupported by his own findings

23  was a valid reason for rejecting the opinion.  *See Bayliss*, 427 F.3d at 1216 (contradictions between

24  a doctor's opinion and the doctor's own observations is a clear and convincing reason for

25  discounting the opinion).  The Court finds Plaintiff's contention to the contrary, raised in

26  conjunction with her challenge to the ALJ's determination as to Dr. Spivey's opinion (*see* Doc. 17

27  at 19), to be unavailing for the reasons explained above.

28         Another valid reason proffered by the ALJ for rejecting Dr. Martin's opinion was that it was

1    not supported by the objective medical record as a whole.  (AR 478.)  *See Tommasetti*, 533 F.3d at

2    1041 (determining that an ALJ may reject an opinion upon finding it inconsistent with the medical

3    record).  Specifically, the ALJ explained that other medical evidence after Dr. Martin's October

4    2013 examination showed that Plaintiff had normal mental status on numerous occasions.  (AR

5    478.)  For example, the ALJ noted, (AR 475), Plaintiff was consistently found to be alert and

6    oriented with normal judgment and insight and appropriate mood and affect at various appointments

7    at Family First Medical Care in 2017 and in June 2018.  (AR 771–72, 778, 781, 784, 790, 792.)  At

8    an appointment in March 2017, Plaintiff was found to be mentally alert, with normal attention span

9    and concentration.  (AR 787.)  In September 2018, Dr. Spivey observed that Plaintiff was "alert and

10   fully oriented" and did "not have severe symptoms of any psychological condition" or any sign of

11   a thought or mood disorder.   (AR 761.)   Although Plaintiff may disagree with the ALJ's

12   interpretation of the medical evidence (*see* Doc. 17 at 19–20), this Court may not second-guess the

13   ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences

14   more favorable to Plaintiff.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair*

15   *v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

16          With regard to Dr. Martin's opinion that Plaintiff was moderately impaired in her ability to

17   adapt to changes in routine work-settings, the ALJ also explained that the opinion was contradicted

18   by Plaintiff's testimony about her duties at work.  (AR 478.)  An ALJ may discount a medical

19   opinion that is inconsistent with a claimant's reported functioning, including her work activity.  *Ford*

20   *v. Saul*, 950 F.3d 1141, 1154–55 (9th Cir. 2020).  Plaintiff testified that she has been working as a

21   paraprofessional, assisting teachers, for a few days a week since 2016.  (AR 505–09.)  Her duties

22   include helping feed "handicapped" children, supervising their play, assisting with homework, and

23   checking out library books. (AR 508–09.)  As the ALJ reasonably determined (AR 478), Plaintiff's

24   demonstrated ability to carry out these varied duties conflicted with Dr. Martin's opinion that

25   Plaintiff was moderately limited in adapting to changes in routine work settings.  This was a clear

26   and convincing reason for rejecting Dr. Martin's opinion.[10]

27

28   [10] The ALJ offered two additional reasons for rejecting Dr. Martin's opined moderate limitations: (1) Dr. Martin "did not have the benefit of reviewing the longitudinal treatment record"; and (2) "[i]t is not clear that [Plaintiff's] ability to maintain pace and persistence translates to any specific work scenario."  (AR 477.)  The Court finds neither reason to

1    In sum, the Court concludes that the ALJ provided valid reasons for rejecting Drs. Spivey's

2    and Martin's opinions of moderate impairments to certain areas of Plaintiff's mental functioning.

3    Additionally, the Social Security "regulatory scheme . . . does not mandate that the diagnosis of a

4    'moderate' degree of limitation in one's ability to respond to changes in the workplace setting must

5    be found to be a 'sever[e]' mental impairment." *Koehler v. Astrue,* 283 F. App'x. 443, 445 (9th Cir.

6    2008).  Even assuming that the ALJ should have accepted Drs. Spivey's and Martin's uncontradicted

7    opinions that Plaintiff had a mild-to-moderate and moderate limitation, respectively, to her ability

8    to adapt to changes in work settings, it was not error for the ALJ to nonetheless conclude that

9    Plaintiff's mental impairments were non-severe.  *See, e.g.*, *Koehler*, 283 F. App'x. at 445 (holding

10   that the ALJ's finding that the claimant lacked a "severe" mental impairment was proper even

11   though claimant had "moderate" limitation in the "ability to respond to changes in the workplace

12   setting"); *Graham v. Colvin*, No. 14–cv–05666 JRC, 2015 WL 433022, at *4 (W.D. Wash. Feb. 2,

13   2015) ("Contrary to plaintiff's argument, a 'moderate' impairment in one area is not inconsistent

14   with the ALJ's finding that plaintiff did not have a severe mental impairment that significantly

15   limited her ability to work").

16           **c.   The ALJ's Formulation of Plaintiff's Mental RFC Was Not Erroneous**

17           An ALJ must consider the limiting effect of all impairments, including those that are non-

18   severe, in assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  However,

19   an ALJ is not required to include limitations in the RFC if the record supports a conclusion that the

20   non-severe impairment does not cause a significant limitation in the claimant's ability to work.  *See*

21   *Koshak v. Berryhill*, 2018 WL 4519936, at *8 (C.D. Cal. Sept. 19, 2018); *Banks v. Berryhill*, 2018

22   WL 1631277, at *4 (C.D. Cal. Apr. 2, 2018).  So long as the ALJ "actually reviews the record and

23   specifies reasons supported by substantial evidence for not including the non-severe impairment [in

24   _____

     be valid. *See Gaither v. Colvin*, No. CV 12–10933–DTB, 2014 WL 632371, at *3 (C.D. Cal. Feb. 18, 2014) (finding
25   that the ALJ improperly rejected an examining physician's opinion because it was based on a "one-time physical
     examination" and the physician "did not have the opportunity to review the longitudinal treatment record"); 20 C.F.R.
26   § 404, Sub. P, App. 1 § 12.00(c)(3) ("Concentration, persistence, or pace refers to the ability to sustain focused attention
     and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work
27   settings.").  But because the ALJ provided other valid reasons for discounting Dr. Martin's opinion, as discussed above,
     the Court finds any error to be harmless. *Barber v. Astrue*, No. 1:10–cv–01432–AWI–SKO, 2012 WL 458076, at *13
28   (E.D. Cal. Feb. 10, 2012) (finding harmless error where the ALJ "stated other valid reasons" for rejecting a physician's
     opinion) (citing *Stout*, 454 F.3d at 1054 and *Burch*, 400 F.3d at 679).

1  the RFC determination], the ALJ has not committed legal error."  *Medlock v. Colvin*, 2016 WL

2  6137399, at *5 (C.D. Cal. Oct. 20, 2016); *see also McIntosh v. Berryhill*, 2018 WL 3218105, at *4

3  (C.D. Cal. June 29, 2018) (because ALJ concluded that mental impairment caused no more than

4  minimal restrictions, there was no requirement to include it in the claimant's RFC).

5      Here, at step two, the ALJ found that Plaintiff's mental impairments caused no more than

6  mild limitations to her mental functioning.  (AR 473, 479.)  The record reflects that the ALJ

7  considered all of the evidence related to Plaintiff's mental impairments at step four before deciding

8  that inclusion of limitations based on those impairments in the RFC was not warranted.  In particular,

9  the ALJ considered the medical opinion evidence and Plaintiff's testimony about her mental

10  symptoms of brain fog, headaches, fatigue, anxiety, and depression in formulating the RFC.[11]  (AR

11  480–90.)  Furthermore, the ALJ explicitly stated that "additional limitations have been incorporated

12  into the [RFC] determination herein in light of the severe and non-severe impairments."  (AR 487.)

13  Specifically, the ALJ included "[m]oderate noise limits" in the RFC based on Plaintiff's testimony

14  about her noise sensitivity and headaches.  (AR 487.)  The ALJ thus did not err in omitting mental

15  limitations in Plaintiff's RFC.

16      **d.  Harmless Error Analysis**

17      Even assuming the ALJ erred in excluding limitations in the RFC based on Drs. Martin's

18  and Spivey's opinions of (mild-to-)moderate impairment to Plaintiff's ability to maintain pace and

19  persistence and to adapt to changes in routine work-related settings, such error would be harmless

20  given the VE's testimony.

21      The Ninth Circuit has held that a limitation to "simple, routine, repetitive" work can

22  sufficiently accommodate medical opinion evidence that a claimant has a "moderate" limitation in

23  pace and "other mental limitations regarding attention, concentration, and adaption."  *Stubbs-*

24  *Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008).  At the April 2019 hearing, the VE

25  was asked about a hypothetical worker with Plaintiff's education, work experience, RFC determined

26  by the ALJ, and the following additional limitations: understanding, remembering, and carrying out

27

28  [11] As explained below, the ALJ did not err in rejecting some of the medical opinions or in finding Plaintiff's testimony not fully credible.  (*See infra* Sections IV.B & C.)

21

only simple, routine, and repetitive tasks; using judgment limited to simple work-related decisions; and inability to perform any "production rate pace, meaning assembly line work." (AR 530.) The VE testified that such a person could not perform Plaintiff's past relevant work but could perform other jobs available in the national economy, such as fundraiser II, information clerk, and survey worker.[12] (AR 530–31.) Given the VE's testimony that Plaintiff could have performed other jobs in the national economy, even accounting for limitations based on moderate impairments to pace and adaption, the alleged error by the ALJ is not prejudicial and inconsequential to the ultimate nondisability determination. *See Stout*, 454 F.3d at 1055.

Therefore, the Court concludes that the ALJ did not harmfully err in his assessment of Plaintiff's mental RFC.

**B.      The ALJ's Properly Assessed the Medical Opinion Evidence in Formulating the RFC**

Plaintiff claims that the ALJ did not properly assess the medical opinion evidence, and thus, the ALJ's RFC determination that Plaintiff can perform light work without any mental limitations is not supported by substantial evidence. (Doc. 17 at 21–31.) Where, as here, the medical sources in the record conflict regarding Plaintiff's limitations, it is for the ALJ to determine credibility and resolve the conflict. *Thomas v. Barnhart*, 278 F.3d 947, 956–57 (9th Cir. 2002). The Court finds that the ALJ did not err in his assessment of the medical opinion evidence.

**1.      Treating Physician Dr. Adams**

Plaintiff alleges—and the record reflects—that Dr. Adams, a rheumatologist, was Plaintiff's treating physician. (*See* AR 233, 292–348.) In March 2013, Dr. Adams "suggest[ed]" two months of medical disability for Plaintiff. (AR 312.) In May 2013, Dr. Adams extended Plaintiff's disability to July 2013, and thereafter extended her disability for six more months. (AR 302, 370.) The ALJ assigned Dr. Adams' opinion that Plaintiff was disabled "reduced weight" in part because

---

[12] After the VE's response to the hypothetical, the ALJ noted that Plaintiff had changed age categories since the 2015 decision denying her application for disability benefits. (AR 531.) Plaintiff turned fifty-five years old in May 2018 and was thus considered an "advanced age" individual under the applicable regulations. (AR 531.) The ALJ clarified with the VE that the hypothetical "only pertain[ed] to the period when [Plaintiff] was closely approaching advanced age [50–54 years old]," and that Plaintiff would be disabled if the hypothetical were applied to an advanced age individual. (AR 531.) The Court notes, as mentioned above, that the ALJ found at step one that Plaintiff had engaged in substantial gainful activity from October 2017 to December 2017 and October 2018 to December 2018, and the remainder of the ALJ's opinion was addressed to the periods since Plaintiff's alleged onset date of March 18, 2013 that Plaintiff did not engage in substantial gainful activity. (AR 472–73.)

Dr. Adams did not provide "an explanation, or any specific functional limitations that prevented [Plaintiff] from working" and the opinion was on an issue reserved to the Commissioner.  (AR 490.)  Plaintiff contends that the ALJ erred in rejecting Dr. Adams' opinion that she was disabled.  The Court disagrees.

A physician's opinion on the ultimate issue of disability is not entitled to controlling weight because statements "by a medical source that [a claimant] is 'disabled' or 'unable to work' " "are not medical opinions" under the Social Security regulations.  20 C.F.R. §§ 404.1527(e), 416.927(e).  An ALJ "is precluded from giving any special significance to the source; *e.g.*, giving a treating source's opinion controlling weight" when it is on an issue reserved to the Commissioner, such as the ultimate issue of disability.  SSR 96-5p, 1996 WL 374183 at *3 (July 2, 1996); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[t]he law reserves the disability determination to the Commissioner"); *Martinez v. Astrue*, 261 F. App'x 33, 35 (9th Cir. 2007) ("the opinion that [a claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the Commissioner.  It is therefore not accorded the weight of a medical opinion").  "*To be very clear*, rejecting the ultimate conclusion concerning disability and rejecting findings concerning work-related limitations are two vastly different propositions that should not be conflated."  *Neves v. Comm'r of Soc. Sec.*, No. 1:15–cv–01194–EPG, 2017 WL 1079754 at *6 (E.D. Cal. Mar. 21, 2017) (emphasis in original).  Furthermore, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Here, as the ALJ correctly noted, Dr. Adams opined only that Plaintiff was disabled, and he did not articulate any specific functional limitations on Plaintiff's ability to work.  (*See* AR 302, 312, 370.)  Because Dr. Adams' opinion was conclusory and addressed only the ultimate issue of disability—an issue reserved to the Commissioner—the ALJ did not err in discounting the opinion.

**2.    Treating Physician Dr. Powell**

The record reflects that Dr. Powell was Plaintiff's treating rheumatologist after Dr. Adams.  (AR 54, 458–63.)  On August 6, 2016, Dr. Powell submitted a questionnaire on Plaintiff's behalf.  (AR 464–65.)   Dr. Powell opined that Plaintiff's medical impairments precluded her from

23

performing any full-time work at any exertional level, and, during an eight-hour day, Plaintiff could sit for only one hour, stand for only one hour, and walk for only thirty minutes.  (AR 464.)  Dr. Powell further opined that Plaintiff needed to lie down or elevate her legs for two hours in an eight-hour day and she was "unable to multitask due to cognitive dysfunction."  (AR 464.)

In affording Dr. Powell's opinion "reduced weight," the ALJ noted that the opinion was contradicted by the opinions of examining and non-examining physicians, and explained:

> [Dr. Powell's] opinion that [Plaintiff's] medical problems precluded her from performing "any full-time work at any exertional level, including the sedentary level" is on issues [sic] reserved to the Commissioner . . . . His opinion that [Plaintiff] could only sit and stand for one hour and walk for thirty minutes during an eight-hour workday is contradicted by the fact that [Plaintiff] works part time up to five hours a day, which exceeds the limitations set forth by Dr. Powell . . . . [T]he findings he notes in his opinion, including tender points and decreased cognitive function, are not documented in his treatment notes . . . . There is no indication that he documented tender points or that he performed any type of mental status examination.  Thus, it is not clear how he determined that [Plaintiff] had decreased cognitive function, or what tender points he was referring to, and his conclusions lack support in his treatment records.  Furthermore, his conclusory diagnoses and limitations are contradicted by [Plaintiff's] work-related activities subsequent to her alleged onset date.  The treatment records from 2017 through the present are also not supportive of Dr. Powell's opinion.

(AR 489 (internal citations omitted).)

Dr. Powell's opinion that Plaintiff can only sit and stand for one hour and walk for thirty minutes is contradicted by the opinions of Dr. Sharma and the state agency physicians, who all opined that Plaintiff is capable of performing light work.  (AR 82, 97, 750.)  In addition, Dr. Powell's opinion that Plaintiff cannot multitask due to cognitive dysfunction is contradicted by the opinion of Dr. Spivey, who opined that Plaintiff has no impairment to her ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions.  (AR 761, 763.)  The ALJ was thus required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Powell's contradicted opinion.  The Court finds that the ALJ provided several specific and legitimate reasons for discounting Dr. Powell's opinion.

First, the ALJ properly rejected Dr. Powell's opinion that Plaintiff was unable to perform any full-time work at any exertional level because the opinion was on an issue reserved to the Commissioner.  *McLeod*, 640 F.3d at 885; *Martinez*, 261 F. App'x at 35.

Second, "[a] conflict between a treating physician's opinion and a claimant's activity level

is a specific and legitimate reason for rejecting the opinion." *Ford*, 950 F.3d at 1154–55; *Morgan*, 169 F.3d at 601–02.  Here, as the ALJ noted (AR 489), Plaintiff testified that she works part-time as a paraprofessional helping feed "handicapped" children, supervising them during physical education, assisting with homework, and checking out library books (AR 508–09), for approximately three days a week for up to five hours a day (AR 507), which exceeds the limitations set forth by Dr. Powell.  Therefore, the ALJ did not err in discounting Dr. Powell's opinion that Plaintiff could sit and stand for only one hour and walk for only thirty minutes during an eight-hour workday.  Plaintiff contends that she "was not yet working as a substitute teacher's aide in August 2015 when Dr. Powell offered his opinion, so his opinion could not be contradicted by work activity that did not exist until sometime in 2016."  (*See* Doc. 17 at 27.)  This claim is unavailing because "the ALJ is tasked with considering the record as a whole" when reviewing medical evidence.  *Jones v. Berryhill*, No. 3:15−CV−00539-JE, 2017 WL 980554, at *4 (D. Or. Mar. 13, 2017); *see, e.g.*, *Ford*, 950 F.3d at 1150, 1154–55 (inconsistency between a physician's 2014 opinion and the claimant's 2016 work activity was specific and legitimate reason to reject the opinion).

Third, the ALJ discounted Dr. Powell's opinion because the findings noted in his opinion were not documented in his treatment notes.  (AR 489.)  An ALJ may properly discount a treating physician's opinion that is unsupported by the medical record, including his own treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (a treating physician's opinion is properly rejected where the physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]").  As observed by the ALJ, tender points are not documented in Dr. Powell's treatment notes, nor is there any indication that Dr. Powell performed any type of mental status examination to determine Plaintiff's cognitive function.  (*See* AR 458–63.)  Thus, Dr. Powell's own treatment notes fail to provide a basis for his opinion.

In sum, the Court finds that the ALJ provided several specific and legitimate reasons for rejecting Dr. Powell's opinion.[13]  As the Court may neither reweigh the evidence nor substitute its

---

[13] The ALJ also rejected Dr. Powell's opinion regarding Plaintiff's "severe fatigue" and muscle pain because "treatment records from 2017 through the present . . . . directly contradict[ed] Dr. Powell's comments regarding fatigue and pain." (AR 489.)  But in reaching this result, the ALJ appears to have improperly cherry-picked medical appointments where Plaintiff denied fatigue and pain while ignoring other visits where she reported otherwise.  For example, the exhibit cited by the ALJ in support of his determination also included treatment notes reflecting that Plaintiff reported fatigue

judgment for that of the Commissioner, it will not disturb the ALJ's finding, even if, as Plaintiff suggests (*see, e.g.*, Doc. 17 at 28), there is other evidence in the record that would support more favorable findings to her. *See Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."); *Jones v. Berryhill*, No. 217CV03099GMNNJK, 2018 WL 11223431, at *5 (D. Nev. Oct. 29, 2018) ("Simply pointing to some potentially contrary evidence in the record does not suffice to show that an ALJ's decision is not supported by substantial evidence.").

As for Dr. Powell's limitation that Plaintiff is unable to multi-task due to cognitive dysfunction, even assuming the ALJ erred in failing to adopt this limitation, Plaintiff has not shown that the error was harmful. As discussed in Section IV.A.2.c., the VE was asked to consider a hypothetical person with Plaintiff's RFC, but who was also limited to simple, routine, and repetitive tasks—a limitation which accounts for Dr. Powell's opinion that Plaintiff cannot multitask—and the VE testified that such a person would be able to perform jobs available in the national economy. (AR 530.) Thus, the ALJ's failure to include a limitation that Plaintiff was unable to multi-task in the RFC would not have changed the ultimate non-disability determination and was harmless. *Molina*, 674 F.3d at 1111.

### 3.   Examining Physician Dr. Sharma

Dr. Sharma, an internal medicine physician, conducted an evaluation of Plaintiff in September 2018 and opined that Plaintiff could perform light work. (AR 748–51.) The ALJ assigned "[s]ignificant weight" to Dr. Sharma's opinion, explaining the opinion was consistent with findings from Dr. Sharma's physical examination of Plaintiff and other medical evidence in the record. (AR 486.) Plaintiff asserts that it was error for the ALJ to assign greater weight to the opinion of Dr. Sharma, an examining physician who does not specialize in rheumatology and fibromyalgia, than the opinions of Drs. Adams and Powell, her treating rheumatologists. (*See* Doc. 17 at 23.) This claim is unavailing.

"Although the opinion of a specialist is entitled to more weight than a physician who is not

---

in March 2017, fatigue and joint and muscle pain in June 2018, and pain in January 2019. (AR 768, 771, 786.) Therefore, this was not a specific and legitimate reason to discount Dr. Powell's opinion. Nonetheless, the error was harmless because the ALJ provided other valid reasons for rejecting the opinion. *Molina*, 674 F.3d at 1111.

a specialist (20 C.F.R. § 404.1527(d) (5), (f)), the ALJ is not precluded from relying on a physician in internal medicine altogether."  *Suero v. Astrue*, No. CV 06–7596–PA (AGR), 2008 WL 3877118, at *7 (C.D. Cal. Aug. 19, 2008); *see also Garcia v. Colvin*, No. 2:15–CV–0384–CKD, 2016 WL 796658, at *6 (E.D. Cal. Mar. 1, 2016) (finding that "the ALJ was permitted to find that [the doctor's] opinion was entitled to reduced weight regardless of the fact that [the doctor] was a treating specialist."); *Gibbs v. Astrue*, No. C09–5114RJB–KLS, 2010 WL 1417803, at *6 (W.D. Wash. Mar. 8, 2010) ("An ALJ . . . may not give less deference to an examining physician merely because he or she is not a specialist.").  Because Plaintiff has not demonstrated that the reasons identified by the ALJ for assigning significant weight to Dr. Sharma's opinion are unsupported by substantial evidence, the Court finds that the ALJ did not err in relying on Dr. Sharma's opinion in formulating the RFC.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an "examining physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant.").

### 4.    Dr. Pizzirulli

Chiropractors are not included in the list of "acceptable medical sources" who may provide an opinion as to whether a claimant has a medically determinable impairment.  20 C.F.R. §§ 404.1513(a); 404.1527(b); *Figueroa v. Astrue*, No. 2:10–cv–01818 KJN, 2011 WL 4084852, at *3 (E.D. Cal. Sept. 13, 2011) ("Under the applicable regulations, chiropractors . . . are not 'acceptable medical sources.' . . . Only acceptable medical sources may provide medical opinions.").  Instead, chiropractors are "other sources," whose opinions are given less weight than those from "acceptable medical sources," but who may help the ALJ "understand how [the claimant's] impairment affects [the claimant's] ability to work."  *Lederle v. Astrue*, No. 1:09–cv–01736–JLT, 2011 WL 839346, at *11 (E.D. Cal. Feb. 17, 2011) (citing *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996)); 20 C.F.R. §§ 404.913(d), 404.1513(d).  While chiropractors are not "acceptable medical sources" for evidence of impairment, the ALJ still must "provide reasons that are germane to the witness" when discounting their opinions.  *Hill v. Comm'r*, No. 1:14–cv–01813–SAB, 2016 WL 5341274, at *2 (E.D. Cal. Sept. 23, 2016) (citing *Molina*, 674 F.3d at 1111).

Dr. Pizzirulli, a chiropractor, submitted a letter on Plaintiff's behalf in March 2019.  (AR

805–06.)  Dr. Pizzirulli indicated that Plaintiff "[wa]s unable to work a 40 hour per week job" and

that Plaintiff could not "sit or stand too long, without pain in the spine becoming unbearable."  (AR

805.)  Dr. Pizzirulli opined that Plaintiff was "very limited in what she can do and can't do" and

"need[ed] help."  (AR 806.)

     In affording minimal weight to Dr. Pizzirulli's opinion, the ALJ stated:

> [Dr. Pizzirulli's] conclusion that [Plaintiff] is unable to work a 40 hour week is an
> opinion reserved to the Commissioner.  [Dr. Pizzirulli's] statement that [Plaintiff]
> cannot sit "too long" without "pain in the spine becoming unbearable" is contradicted
> by [Plaintiff's] prior statements indicating she can sit without pain, and this opinion
> is not consistent with the corresponding treatment notes which primarily consist of
> routine care for viral illnesses, with normal objective findings.

(AR 490–91.)

     As an initial matter, the Court notes that Plaintiff does not contest the ALJ's reasons for

rejecting Dr. Pizzirulli's opinion, other than asserting that it was erroneous for the ALJ to disregard

the opinion because Dr. Pizzirulli is not an acceptable medical source under the applicable

regulations.  (*See* Doc. 17 at 30–31.)  Plaintiff has therefore waived any challenge to those reasons.

*See Smith*, 194 F.3d at 1052 ("[O]n appeal, arguments not raised by a party in its opening brief are

deemed waived."); *see also Pendley*, 2016 WL 1618156, at *8.  In any event, the Court finds that

the ALJ provided germane reasons for discounting Dr. Pizzirulli's opinion.

     As the ALJ correctly observed, Dr. Pizzirulli's opinion that Plaintiff is unable to work a

forty-hour workweek is not given any "special significance" because the opinion is on an issue

reserved to the Commissioner. (AR 490); *see Tatum v. Comm'r of Soc. Sec.*, No. 1:19–CV–01263–

SAB, 2020 WL 7640588, at *13 (E.D. Cal. Dec. 23, 2020); *Stieber v. Saul*, No. 1:19–CV–00778–

BAM, 2020 WL 6582275, at *6 (E.D. Cal. Nov. 10, 2020) (finding that the ALJ provided germane

reason for discounting a licensed clinical social worker's opinion that the claimant was unlikely to

obtain or keep a job because the opinion was a determination reserved for the Commissioner).

     Next, conflict with a claimant's activities is a germane reason for rejecting an opinion from

a non-acceptable medical source.  *Patricia V. v. Berryhill*, No. C18-955 JCC, 2019 WL 1239270, at

*3 (W.D. Wash. Mar. 18, 2019) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)).

As the ALJ noted, Dr. Pizzirulli's opinion that Plaintiff cannot "sit or stand too long, without pain

in the spine becoming unbearable" (AR 805) is contradicted by Plaintiff's testimony that she had no problems "pain-wise" during long car rides and that sitting did not ever cause her physical pain.[14] (AR 56–57.)  The ALJ thus did not err in his evaluation of Dr. Pizzirulli's opinion.

**5.      Physician's Assistants**

Plaintiff contends that the ALJ erred in failing to credit the opinions of three physician's assistants: Norris, Jadav, and Vigano.  (*See* Doc. 17 at 30–31.)  Like chiropractors, physician's assistants are not considered "acceptable medical sources" under 20 C.F.R. § 416.913, but instead "other sources," whose opinions are not entitled to special weight.  20 C.F.R. § 416.913(d)(1).[15]  To disregard the opinion of a nonacceptable medical, or lay source, the ALJ need only provide a reason that is germane to that witness.  *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017).  "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1114 (citations omitted).

PA Norris opined that Plaintiff should "limit her workload, daily activities and stress[.]" (AR 466.)  In assigning PA Norris' opinion "reduced weight," the ALJ explained that the opinion was "vague" and PA Norris "did not indicate how [Plaintiff] should limit her activities, and fail[ed] to indicate why [Plaintiff] [wa]s limited, other than stating diagnoses."  (AR 490.)  This was a germane reason for discounting PA Norris' opinion, as "[a]n ALJ may reject an opinion that is vague and fails to identify specific functional limitations for the claimant."  *Reynoso v. Saul*, No. 1:19–CV–0314–JLT, 2020 WL 4435482, at *4 (E.D. Cal. Aug. 3, 2020) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)) (collecting cases); *Morgan*, 169 F.3d at 601 (affirming ALJ's discounting of a physician's opinions because they did not show how "symptoms translate[d] into specific functional deficits"); *see also Lynnes v. Colvin*, No. 6:13–cv–01874–AA, 2014 WL 6893685, at *5 (D. Or. Dec. 4, 2014) (finding that the ALJ properly rejected as vague the opinion

[14] Plaintiff testified that sitting for long periods caused her to be anxious.  (AR 56–57.)
[15] The Social Security Administration has adopted new rules applicable to claims filed after March 27, 2017, which expand the category of acceptable medical providers to include, among others, physician assistants. 20 C.F.R. §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8) (2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  The revisions do not apply to Plaintiff's claim, which was filed on May 22, 2013.

1 | of an examining psychologist who stated that the claimant had "significant problems functioning").

2 | As for the two other physician's assistants, PA Jadav opined that Plaintiff "should not be

3 | pushed into activities that worsen [her] symptoms," including "[m]isdirected exercise" and "major

4 | stressors" (AR 410–11), and PA Vigano opined that she "recommended[ed] against [Plaintiff]

5 | entering the work force, as she [wa]s physically and cognitively unable to do so" (AR 745). Plaintiff

6 | correctly observes that the ALJ failed to address the opinions of PA Jadav and PA Vigano in his

7 | opinion (*see* Doc. 17 at 31), but the Court disagrees that the error is harmful and thus reversible.

8 | *See Molina,* 674 F.3d at 1118–19 (holding that the ALJ's failure to address lay witness testimony

9 | was harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or

10 | where the testimony is contradicted by more reliable medical evidence that the ALJ credited");

11 | *Corso v. Colvin,* No. 3:13–CV–250–AC, 2014 WL 950029, at *12 (D. Or. Mar. 11, 2014).

12 | Here, the same reasons proffered by the ALJ for rejecting Dr. Pizzirulli's and PA Norris'

13 | opinions are germane to rejecting PAs Jadav's and Vigano's opinions. Like PA Norris, PAs Jadav

14 | and Vigano did not assess any functional limitations. (AR 410–11, 745.) As with Dr. Pizzirulli's

15 | opinion, PA Vigano's opinion that Plaintiff is "physically and cognitively unable" to work was on

16 | an issue reserved to the Commissioner and thus not entitled to any special significance. The ALJ

17 | therefore did not commit harmful error in failing to address PAs Jadav's and Vigano's opinions.

18 | **C.    The ALJ Properly Evaluated Plaintiff's Testimony**

19 | **1.    Legal Standard**

20 | In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ

21 | must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First,

22 | the ALJ must determine whether the claimant has presented objective medical evidence of an

23 | underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The

24 | claimant is not required to show that their impairment "could reasonably be expected to cause the

25 | severity of the symptom she has alleged; she need only show that it could reasonably have caused

26 | some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.

27 | 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only

28 | reject the claimant's testimony about the severity of the symptoms if the ALJ gives "specific, clear

and convincing reasons" for the rejection.  *Id*.  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is " 'the most demanding required in Social Security cases.' "  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not sufficient to satisfy this standard; the ALJ " 'must identify what testimony is not credible and what evidence undermines the claimant's complaints.' "  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)).

## 2. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 487.)  The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." (AR 487.)  Since the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.

In evaluating Plaintiff's credibility, the ALJ stated, in part:

> As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of . . . her symptoms, they are not entirely consistent with the overall medical evidence, which confirms that while she has been diagnosed with several severe impairments, she nonetheless has been able to resume rather substantial activities, has not developed muscle loss or loss of strength, and has received only routine care since

1  2015.

2  (AR 481.)  The ALJ also reasoned that Plaintiff was taking only over-the-counter pain medication

3  despite her report of "pain all over her body," and that Plaintiff "was not entirely forthright with Dr.

4  Sharma."  (AR 487.)  The Court finds that the ALJ offered sufficient "clear and convincing" reasons,

5  supported by substantial evidence, to discount Plaintiff's testimony.

6              **a.  Plaintiff's Activity Level**

7              It is appropriate for an ALJ to consider a claimant's activities that undermine claims of

8  severe limitations in making the credibility determination.  *See Fair*, 885 F.2d at 603; *Morgan*, 169

9  F.3d at 600; *Rollins*, 261 F.3d at 857; *see also Thomas*, 278 F.3d at 958–59 (an ALJ may support a

10 determination that the claimant was not entirely credible by identifying inconsistencies between the

11 claimant's complaints and the claimant's activities.).  It is well-established that a claimant need not

12 "vegetate in a dark room" to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561

13 (9th Cir. 1987).  However, if a claimant can spend a substantial part of their day engaged in pursuits

14 involving the performance of physical functions that are transferable to a work setting, a specific

15 finding as to this fact may be sufficient to discredit an allegation of disability.  *Fair*, 885 F.2d at

16 603.  "Even where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds

17 for discrediting the claimant's testimony to the extent that they contradict claims of a totally

18 debilitating impairment."  *Molina*, 674 F.3d at 1113.

19             Plaintiff alleges an inability to work due to fibromyalgia and CFS, which she alleges cause

20 her to experience exhaustion, anxiety, fatigue, and pain.  (AR 59, 511–12.) According to Plaintiff,

21 she is unable to sit and stand for more than half an hour at a time and she has trouble with

22 concentration.  (AR 513–14.)  In evaluating Plaintiff's credibility, however, the ALJ cited activities

23 that were inconsistent with Plaintiff's testimony about the severity of her symptoms and

24 impairments.  The ALJ observed that "[w]hile [Plaintiff] alleged severe limitations due to her fatigue

25 and other symptoms," Plaintiff has been able to work part-time since 2016, approximately three

26 days a week for five hours a day, helping "handicap" children by feeding them, watching them play,

27 and assisting with homework in reading and writing.  (AR 488, 507–08.)  Plaintiff also works in the

28 library sometimes, where she checks out books to the children.  (AR 508–09.)  In addition, as the

ALJ noted and the record reflects, Plaintiff drives every day, handles her own personal self-care, cleans and cooks, and goes grocery shopping.  (AR 502, 514–15.)  Plaintiff testified that she enjoys going to the movies and doing arts and crafts.  (AR 516–17.)

The Court finds that Plaintiff's activities were reasonably considered by the ALJ to be inconsistent with her alleged inability to work due to her fatigue and other symptoms.  (AR 488.) Even if some of these activities do not rise to the level of transferable work skills, they are, as a whole, inconsistent with allegations of completely debilitating impairment.  *Molina*, 674 F.3d at 1113.  Accordingly, the inconsistencies between Plaintiff's activity level and her complaints was a clear and convincing reason to find Plaintiff's testimony not credible.  *See* 20 C.F.R. § 416.929(c)(3); *Stubbs-Danielson*, 539 F.3d at 1175.

### b.  Plaintiff's Inconsistent Statements

In determining a claimant's credibility, the ALJ may also consider "ordinary techniques of credibility evaluation," including inconsistent statements.  *Smolen*, 80 F.3d at 1284; *Scott v. Colvin*, No. 15–CV–0065–FVS, 2016 WL 1274553, at *6 (E.D. Wash. Mar. 31, 2016) (explaining that "conflicting or inconsistent statements concerning drug use can contribute to an adverse credibility finding").  Here, the ALJ noted that Plaintiff "was not entirely forthright with Dr. Sharma."  (AR 487.)  At the examination with Dr. Sharma, Plaintiff denied smoking or using any drugs (AR 749), but two days later, Plaintiff told Dr. Spivey that she uses marijuana daily for pain and insomnia (AR 759).  "Plaintiff's inconsistent statements regarding the frequency of h[er] marijuana use provide a clear and convincing reason for discounting his testimony."  *Vellanoweth v. Astrue*, No. CV 10–3105–MLG, 2010 WL 5094254, at *3 (C.D. Cal. Dec. 6, 2010) (citing *Fair*, 885 F.2d at 604 n. 5; *Tonapetyan*, 242 F.3d at 1148).  Thus, the ALJ did not err in considering Plaintiff's inconsistent statements regarding her marijuana use in discounting Plaintiff's testimony.

### c.  The ALJ's Remaining Reasons

The ALJ's other reasons for discounting Plaintiff's testimony are that Plaintiff "has not developed muscle loss or loss of strength, and has received only routine care since 2015."  (AR 481.)  The Court finds that these are not clear and convincing reasons.

First, "normal muscle strength, tone, and stability . . . .  are perfectly consistent with

1 debilitating fibromyalgia." *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017); *see Calleres v.*

2 *Comm'r of Soc. Sec.*, No. 1:19–CV–00513–EPG, 2020 WL 4042904 (E.D. Cal. July 17, 2020)

3 (finding that "the ALJ's reliance on instances of normal range of motion, no acute distress, and

4 normal x-ray and MRI findings to discount Plaintiff's symptom testimony does not constitute a clear

5 and convincing reason"). Accordingly, the ALJ's reliance on indications that Plaintiff "has not

6 developed muscle loss or loss of strength" (AR 481) to discount Plaintiff's testimony is improper.

7     Next, routine, conservative treatment can be sufficient to discount a claimant's subjective

8 testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-

9 51 (9th Cir. 2007). If, however, the claimant has a good reason for not seeking more aggressive

10 treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective

11 symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Here,

12 Plaintiff pursued mental health treatment and specialized care from rheumatologists and the

13 Stanford Clinic until she lost her insurance and could no longer afford it. (AR 48, 512, 513, 520.)

14 Failure to obtain treatment because a plaintiff cannot afford the treatment is not a valid reason to

15 discount subjective testimony. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The ALJ's

16 decision provided no basis to reject Plaintiff's explanation that she stopped seeking specialized

17 treatment due to her change in insurance and was therefore not a clear and convincing reason to

18 reject Plaintiff's testimony.

19     Although some of the ALJ's reasons for discounting Plaintiff's testimony were improper,

20 the Court finds the inclusion of erroneous reasons to be harmless because the ALJ also articulated

21 reasons that were clear and convincing and supported by substantial evidence. *See Molina*, 674

22 F.3d at 1117. The ALJ thus did not harmfully err in his evaluation of the opinion evidence.

23 **D.     The ALJ Properly Evaluated the Third-Party Statements**

24     An ALJ must consider the statements of lay witnesses in determining whether a claimant is

25 disabled. *Stout*, 454 F.3d at 1053. Lay witness evidence cannot establish the existence of medically

26 determinable impairments, but lay witness evidence is "competent evidence" as to "how an

27 impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913. If lay witness

28 statements are rejected, the ALJ "must give reasons that are germane to each witness." *Nguyen v.*

*Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks and citation omitted).

Without summarizing their statements or identifying what portions of the statements the ALJ should have accepted, Plaintiff cursorily asserts that the ALJ erroneously rejected four third-party statements—from Diane Ferrell, Bill Hinnichsen, Lisa Pizza, and "one other individual whose name is unintelligible" (AR 491). (*See* Doc. 17 at 36.)  As mentioned above, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Molina*, 674 F.3d at 1114.

Here, the ALJ assigned "minimal weight" to the lay statements, explaining: "These representations as to [Plaintiff's] activities and functional limitations are similar to those described by [Plaintiff] and are found consistent with the evidence only insofar as [Plaintiff's] allegations have been found consistent as explained [in the opinion]." (AR 491.)  Plaintiff does not contest the ALJ's determination that the lay statements were similar to Plaintiff's testimony, only that "the ALJ's reasons for rejecting Plaintiff's testimony were inadequate." (Doc. 17 at 36.)  As explained above, the ALJ properly rejected Plaintiff's testimony about the severity of her limitations, in part, on the grounds that the limitations were inconsistent with Plaintiff's activity level.  The Court thus concludes that the reason given for discounting Plaintiff's testimony apply to the lay evidence as well, and any error by the ALJ in failing to more specifically address the third-party statements was harmless.

## V.       CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Lori Lynn Kendall.

IT IS SO ORDERED.

Dated:   **February 24, 2021**                    /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE